PENZATO, J.
The State of Louisiana, through the Department of Public Safety and Corrections, Office of Motor Vehicles (OMV), seeks review of a district court judgment reversing the suspension and disqualification of Kim W. Kunow's commercial driver's license. For the following reasons, we reverse the judgment of the district court and reinstate OMV's suspension and disqualification.
*919 FACTS AND PROCEDURAL HISTORY
On April 2, 2016, Kim W. Kunow, while driving his personal vehicle, was pulled over by Deputy Thomas J. Schlesinger of the St. Tammany Parish Sheriff's Office for swerving outside the lane of travel multiple times. Kunow exhibited extreme impairment, a strong odor of alcoholic beverage, swaying, and slurred speech. Deputy Schlesinger performed several field sobriety tests, which Kunow failed. Kunow was placed under arrest for suspicion of driving while intoxicated in violation of La. R.S. 14:98. Deputy Schlesinger searched Kunow and found both Schedule II and Schedule IV controlled dangerous substances in Kunow's possession, and he was further charged with violating La. R.S. 40:967(C) and La. R.S. 40:969(C). Kunow was transported to the Sheriff's office where he submitted to a chemical breath test, which revealed that his blood alcohol concentration was 0.167 grams percent by weight (0.167 percent). At the time of the arrest, Kunow possessed a Class "A" commercial driver's license (CDL). Deputy Schlesinger seized Kunow's license and issued him a temporary permit as provided in La. R.S. 32:667(A). As a result of Kunow's blood alcohol concentration, OMV suspended his driving privileges for 90 days pursuant to La. R.S. 32:667(B)(l)(b) and disqualified his CDL for one year pursuant to La. R.S. 32:414.2(A)(4)(a)(i).[1]
Kunow timely requested and was granted an administrative hearing to contest the suspension and disqualification of his license. On June 3, 2016, the administrative law judge (ALJ) affirmed OMV's suspension and disqualification of Kunow's driving privileges. On July 5, 2016, Kunow filed a petition in the Twenty-Second Judicial District Court for issuance of a temporary restraining order and for de novo review of the order suspending his driver's license pursuant to Louisiana's Implied Consent Law, La R.S. 32:661, et seq. Kunow claimed that OMV submitted insufficient proof at the administrative hearing. He also asserted that he was employed as a commercial truck driver and could not perform his duties without a valid driver's license. The district court issued an ex-parte temporary restraining order preventing OMV from enforcing the suspension and disqualification of Kunow's driving privileges on July 7, 2016. Following a hearing on April 27, 2017, the district court reversed the suspension and disqualification of Kunow's driving privileges as set forth in the court's written reasons. A judgment was signed in accordance therewith on January 12, 2018, reversing the suspension and disqualification of Kunow's driving privileges. It is from this judgment that OMV appeals.
LAW AND ANALYSIS
When a decision by a trial court involves a legal question, this court owes no deference to the legal conclusions of the trial court. Rather, appellate review regarding questions of law is simply review of whether the trial court was legally correct or legally incorrect. Jackson v. BASF Corp., 2004-2777 (La. App. 1 Cir. 11/4/05), 927 So.2d 412, 415, writ denied, 2005-2444 (La. 3/24/06), 925 So.2d 1231.
OMV claims that the trial court erred in agreeing with Kunow that a disqualification under La. R.S. 32:414.2(A)(4)(a)(i) requires a criminal conviction and that Kunow's request for a de novo review bars the imposition of statutory suspension and disqualification of his CDL pursuant to La. R.S. 32:667(B)(1)(b) and *920 La. R.S. 32:414.2(A)(4)(a)(i). Kunow argues that because he testified at the trial de novo that his employer had enforced the one-year disqualification, the district court was entitled to reinstate his CDL.
The January 12, 2018 judgment on appeal incorporated the written reasons of the district court. Incorporating written reasons into a judgment does not render an otherwise complete and valid judgment invalid merely because it contains surplus language. Country Club of Louisiana Property Owners Assn., Inc. v. Dornier, 96-0898 (La. App. 1 Cir. 2/14/97), 691 So.2d 142, 149. The written reasons form no part of the judgment. Allerton v. Broussard, 2010-2071 (La. 12/10/10), 50 So.3d 145, 147. However, an appellate court can consider the reasons for judgment in determining whether the district court committed a legal error. Winfield v. Dih, 2001-1357 (La. App. 4 Cir. 4/24/02), 816 So.2d 942, 948.
In its written reasons, the district court noted that Kunow timely requested, and was granted, an administrative hearing pursuant to the Administrative Procedures Act, La. R.S. 49:950 et seq.[2] to contest the suspension of his license for intoxication pursuant to La. R.S. 32:667, which the ALJ affirmed. The district court agreed with Kunow that La. R.S. 32:414.2(A)(4)(a)(i) provides that a disqualification shall be considered a "conviction" for purposes of compliance with federal motor carrier rules. The district court also stated that the language in La. R.S. 32:414.2(A)(4)(a)(i), which states that "a disqualification pursuant to this Item which has been affirmed after an administrative hearing shall be considered a conviction," bars the imposition of the statutory suspension by the request for de novo review.
Louisiana's Implied Consent Law, La. R.S. 32:661 et seq. , addresses the testing of persons suspected of operating motor vehicles while under the influence of alcoholic beverages or controlled dangerous substances. Louisiana Revised Statute 32:661(A)(1) provides, in pertinent part, that any person "operat[ing] a motor vehicle upon the public highways of this state shall be deemed to have given consent ... to a chemical test or tests of his ... breath ... for the purpose of determining the alcoholic content of his blood" if the person is "arrested for any offense arising out of acts alleged to have been committed while the person was driving or in actual physical control of a motor vehicle while believed to be under the influence of alcoholic beverages."
When a law enforcement officer places a person under arrest for violation of La. R.S. 14:98, La. R.S. 14:98.1, or any parish or municipal ordinance that prohibits operating a vehicle while intoxicated, and the person submits to an approved chemical test for intoxication, which results show a blood alcohol level of .08 percent or above by weight, the officer is required to seize the driver's license of the person under arrest and issue in its place a temporary receipt of license. La. R.S. 32:667(A)(1). Further, the OMV is required to disqualify a person from operating a commercial motor vehicle for one year, whether the person was operating a commercial or noncommercial motor vehicle at the time of the arrest. La. R.S. 414.2(A)(4)(a)(i).
The Third Circuit explained in In re Lafleur , 2012-1227 (La. App. 3 Cir. 3/6/13), 129 So.3d 540, 543 :
Louisiana has enacted two statutory schemes concerning the "suspension of *921 driving privileges for persons who drive while intoxicated or under suspicion of doing so." Those schemes, codified at La. R.S. 32:661 -670 and at La. R.S. 32:414 -415.1, permit [OMV] to suspend the driving privileges of those persons meeting the statutory requirements contained therein. However, although both schemes contain provisions concerning suspension of driving privileges based on driving while intoxicated or the suspicion thereof, "the two schemes are parallel, they are not integrated. The two statutory schemes are separate and distinct." The procedures delineated in La. R.S. 32:667 -670 concern those who have been arrested upon suspicion of driving while intoxicated, while La. R.S. 32:414 -415.1 concerns those who have been convicted of and sentenced for, among other offenses, operating a vehicle while intoxicated. [Citations omitted; emphasis added].
A person may request an administrative hearing to contest OMV's decision in accordance with La. R.S. 32:668(A). At this hearing, OMV must prove that the officer had reasonable grounds to believe that the person had been driving under the influence of alcohol, that the person was placed under arrest and advised by the officer as provided in La. R.S. 32:661, and that the driver voluntarily submitted to an approved chemical test and the test resulted in a blood alcohol reading of .08 percent or above by weight. See La. R.S. 32:668(A) ; Flynn v. State, Dept. of Public Safety and Corrections, 608 So.2d 994, 996 (La. 1992).
After a person has exhausted his remedies with OMV, he may file a petition for judicial review in the appropriate district court. La. R.S. 32:668(C)(1).[3] On such review, the district court is required to conduct a trial de novo. Flynn, 608 So.2d at 998-99 ; Millen v. State, Dept. of Public Safety & Correction, 2007-0845 (La. App. 1 Cir. 12/21/07), 978 So.2d 957, 961. As such, the district court is not restricted to a review of the ALJ's findings, and the district court's review can encompass the calling of witnesses, the taking of testimony, and the introduction of evidence. Millen, 978 So.2d at 961 n.4. Such a trial is a civil action amenable to all of the ordinary rules of procedure and proof. Further, the fact that this is an action for judicial review of a decision resulting from an administrative hearing does not change the burden of proof placed by law on the plaintiff. Stoltz v. Dept. of Public Safety & Correction , 2013-1968 ( La. App. 1 Cir. 6/25/14), 147 So. 3d 1131, 1133.
In the present case, OMV suspended Kunow's driving privileges and disqualified him from operating a commercial motor vehicle for one year based upon his submitting to a chemical test for intoxication, which resulted in a blood alcohol reading above .08 percent. Kunow requested an administrative hearing before the ALJ, who affirmed OMV's decision. Kunow did seek further review in the district court, which issued the temporary restraining order and reversed the decision of OMV. On appeal, OMV claims that the district court erroneously interpreted La. R.S. 32:414.2(A)(4)(a)(i) and reversed the suspension and disqualification of Kunow's CDL based on his seeking de novo review of the administrative decision.
*922 At the trial of this matter, the parties stipulated that Deputy Schlesinger did not have to testify, but stipulated that his testimony would be consistent with the arrest reports and the exhibits introduced by OMV. Those exhibits were: the certification of arrest of Kunow; the arrestee's rights form; the Intoxilyzer 5000 operational checklist; the Intoxilyzer 5000 printout showing a blood alcohol concentration of 0.167 percent and a copy of Kunow's license; a synopsis of the arrest; and the certificate and recertifications for the instrument, technician, and deputy relative to the test administered. The parties also stipulated that the district court could take judicial notice of docket numbers 577518 and 577519, criminal cases against Kunow pending in the same judicial district court in another division, indicating that Kunow had been placed in the District Attorney's diversion program and those matters had been continued without date.[4] Kunow then testified that he was driving his own personal vehicle at the time of the arrest. The trial took place on April 27, 2017, and he testified that his employer had not allowed him to drive as a commercial driver since his DWI arrest, which had been over a year before the time of the trial.
In 1989, the legislature created a series of provisions relating to the suspension and restriction of commercial driving privileges. La. R.S. 32:414.2 -414.4. The thrust of these statutes is to provide stronger penalties for commercial drivers who commit certain enumerated offenses while operating a commercial motor vehicle. Austin v. Department of Public Safety, Office of Motor Vehicles, 46,654 (La. App. 2 Cir. 11/2/11), 77 So.3d 474, 475.
Louisiana Revised Statute 32:414.2 specifically addresses commercial motor vehicle drivers and grounds for disqualification of a CDL. Subsection (A)(4) provides:
Except as provided in Subparagraph (2)(a) of this Subsection for lifetime disqualification, and in Paragraph (3) of this Subsection for three years disqualification for offenses committed while transporting hazardous materials, any person shall be disqualified from operating a commercial motor vehicle for a minimum period of one year for:
(a)(i) A first reported submission to a chemical test in connection with an arrest of a commercial driver's license holder, while operating a commercial motor vehicle or a noncommercial motor vehicle, of operating under the influence of alcohol, operating with an alcohol concentration of 0.08 percent or more, or operating under the influence of a controlled dangerous substance. A disqualification pursuant to this Item for which a timely administrative hearing request has not been received or a disqualification pursuant to this Item which has been affirmed after an administrative hearing shall be considered a conviction for purposes of compliance with federal motor carrier rules. [Emphasis added].
OMV contends that the statutory language in La. R.S. 32:414.2 clearly states that any person possessing a CDL faces a mandatory one-year disqualification for submitting to a chemical test resulting in a blood alcohol concentration greater than 0.08 percent while operating a motor vehicle. Prior to 2013 La. Acts, No. 386, § 1, a "conviction" was required. See Brooks v. Louisiana Dept. of Public Safety & Correction, 2011-71 (La. App. 3 Cir. 6/1/11), 66 So.3d 1236, 1239, writ denied, *923 2011-1977 (La. 11/14/11), 75 So.3d 948 and writ not considered , 2011-2760 (La. 12/14/11), 76 So.3d 1184. The 2013 amendment shows a clear intention on the part of the legislature that an administrative proceeding would be considered a conviction for purposes of Louisiana being in compliance with 49 C.F.R. 383.51.[5]
Kunow argues that because he entered a diversion program, he was not convicted, and therefore, his CDL should not be disqualified. Louisiana Revised Statute 32:414.2(A)(9) states that a "conviction" includes "an unvacated adjudication of guilt or a determination in a court of original jurisdiction or by an authorized administrative tribunal that a person has violated or failed to comply with the law .... A conviction shall occur regardless of whether a person is referred to a remedial or pretrial diversion program as an alternative to the imposition of a penalty, fine, or other sanction." La. R.S. 32:414.2(A)(9)(a).
In this case, we find that the ALJ's finding that Kunow "voluntarily submitted to an approved chemical test, which showed a blood alcohol level of 0.167 percent, exceeding the legal limit" is such a "determination" by an authorized administrative tribunal[6] and constitutes a conviction as defined by La. R.S. 32:414.2(A)(9)(a). Furthermore, the definition of "conviction" clearly states that it occurs "regardless of whether a person is referred to a remedial or pretrial diversion program." La. R.S. 32:414.2(A)(9)(a). The district court overturned the ALJ's suspension of Kunow's license, even though there was no conclusion that the OMV's evidence was inadequate. Kunow did claim in his petition that for several reasons, the evidence before the ALJ was insufficient. However, at the trial of this matter, Kunow did not dispute the adequacy of the evidence and stipulated as to the evidence put forth by OMV. Therefore, for purposes of La. R.S. 32:414.2, Kunow was "convicted" of DWI.
Furthermore, we find nothing in the statute to support holding that the mere fact of filing for judicial review bars *924 the suspension or disqualification of a CDL. A similar argument was made in Hymel v. Dep't of Pub. Safety , 2002-0734 (La. App. 1 Cir. 4/2/03), 843 So.2d 1172, 1173, where Hymel argued that La. R.S. 32:667 provided no authority for the suspension of his driver's license following an administrative hearing request. The court held that La. R.S. 32:668(C) provided for remedies after exhausting the administrative review process, including petitioning the district court for de novo judicial review. The court stated, "the mere request for a hearing does not act as a bar or erasure of a proper suspension. If the request alone acted as an automatic prohibition of suspension, the subsequent hearing and judicial review afforded the arrestee would serve no purpose." Hymel, 843 So.2d at 1174, citing Meilleur v. Louisiana Department of Public Safety , 613 So.2d 281, 283 (La. App. 3d Cir.), writ denied, 614 So.2d 1261 (La. 1993) (finding it would be an absurdity to agree with plaintiff that any arrestee who timely requests an administrative hearing would avoid suspension).
While the facts of Hymel and Meilleur involved the request for an administrative hearing, the rationale is applicable to the facts of this case. Kunow's filing for de novo review does not bar the suspension and disqualification of his license. The purpose of the de novo review is to review the "final order of suspension or denial by [OMV] in the same manner and under the same conditions as provided in [La.] R.S. 32:414." La, R.S. 32:668(C)(1). Therefore, the district court was required to determine if the suspension and disqualification was proper. The parties in the present case stipulated to the facts of Kunow's arrest and his submission to a chemical test, which revealed a blood alcohol concentration of 0.167 percent. The stipulation established that the burden of proof was met. It is well settled that a stipulation amounts to full proof against those who made it. It has the effect of withdrawing a fact from issue and disposing wholly with the need for proof of that fact. A stipulation has the effect of a judicial admission or confession, which binds all parties and the court. A court of appeal reviewing a decision based on stipulated facts is bound by the four corners of the stipulation. Terral v. Waffle House, Inc., 96-0589 (La. App. 1 Cir. 12/20/96), 684 So.2d 1165, 1167-68. Kunow did not dispute that there was inadequate evidence to support the ALJ's ruling.
Kunow argues on appeal that the district court found that OMV's suspension and disqualification was improper because he had already faced a disqualification of his driving privileges for over a year by his employer, who he alleges ultimately imposed the disqualification. Although the district court did state orally at the trial that Kunow had "paid the price" because he had not been operating a commercial motor vehicle for over a year at the time of trial, nowhere in the district court's written reasons or judgment is there any indication that the district court's judgment was based on Kunow's employer refusing to permit him to drive a commercial motor vehicle for over a year. Even if the judgment had been based on the actions of the employer of Kunow, this would not satisfy the disqualification mandated by La. R.S. 32:414.2(A)(4)(a)(i). The statute does not contain such an exception.
The district court based its judgment on Kunow's filing of a request for de novo review of the ALJ ruling. We cannot agree that the filing alone bars the imposition of the 90 day statutory suspension pursuant to La. R.S. 32:667(B)(1)(b) and a one-year disqualification pursuant to La. R.S. 32:414.2(A)(4)(a)(i). The filing for de novo review with the district court permitted *925 Kunow the opportunity to establish that the ALJ's finding was not based on adequate evidence or that OMV failed to carry its burden of proof. However, Kunow stipulated to the facts, and we find that those facts supported the suspension and disqualification of his license.
CONCLUSION
For the above and foregoing reasons, the January 12, 2018 judgment of the district court, which reversed the final administrative decision of the Louisiana Department of Public Safety and Corrections, Office of Motor Vehicles, is hereby reversed. The suspension and disqualification of the license of Kim W. Kunow is reinstated. All costs of this appeal are assessed against plaintiff, Kim W. Kunow.
REVERSED AND RENDERED.

This statute adopts the requirements of the Federal Motor Carrier Safety Administration rules so that Louisiana is in compliance with 49 C.F.R. § 383.51.

It has been held that the Administrative Procedures Act is inapplicable to proceedings brought pursuant to sections 414 and 668 of title 32 of the Louisiana Revised statutes. See Flynn v. State, Dep't of Public Safety & Correction, 608 So.2d 994, 996 n.4 (La. 1992).

This statute refers to no particular type of license and therefore applies to all, including a CDL. See Moore v. State, Dept. of Public Safety, License Control & Driver Imp. Div. , 26,949 (La. App. 2 Cir. 5/10/95), 655 So.2d 644, 645. See also, La. R.S. 32:414.2(C)(2) which states, in pertinent part: "[t]he procedures for testing commercial motor vehicle operators for alcohol or controlled substances, and for reporting the results shall, with any appropriate modifications, be the same as for other drivers."

We note that the parties stipulated that Kunow had been placed in a diversion program. Presumably, the diversion program arose from the April 2, 2016 arrest, but it is unclear from the record why there were two pending criminal matters.

49 C.F.R. § 383.51 provides in pertinent part:
(a) General.
(1) A person required to have a CLP [commercial learner's permit] or CDL who is disqualified must not drive a CMV [commercial motor vehicle].
(2) An employer must not knowingly allow, require, permit, or authorize a driver who is disqualified to drive a CMV.
(3) A holder of a CLP or CDL is subject to disqualification sanctions designated in paragraphs (b) and (c) of this section, if the holder drives a CMV or non-CMV and is convicted of the violations listed in those paragraphs.
(4) Determining first and subsequent violations. For purposes of determining first and subsequent violations of the offenses specified in this subpart, each conviction for any offense listed in Tables 1 through 4 to this section resulting from a separate incident, whether committed in a CMV or non-CMV, must be counted.
* * *
(b) Disqualification for major offenses. Table 1 to § 383.51 contains a list of the offenses and periods for which a person who is required to have a CLP or CDL is disqualified, depending upon the type of vehicle the driver is operating at the time of the violation, as follows:
Table 1 to § 383.51
* * *
For a first conviction or refusal to be tested while operating a non-CMV, a CLP or CDL holder must be disqualified from operating a CMV for ... [b]eing under the influence of alcohol as prescribed by State law [for] 1 year[.]

The State of Louisiana, Department of Civil Service, Division of Administrative Law is authorized by La. R.S. 32:667(D)(1) to hold a hearing upon a person's license being suspended.